MONCUKE, J.,
delivered the opinion of the court:
The questions to be decided in this case arise upon the bills of exception, and will be considered and disposed of in their order.
1. The plaintiffs, to prove their right to freedom, offered to give in evidence to the jury the declarations of James Fulton, the testator of the defendants, made some fourteen or fifteen years before the trial, that: Gracey and her children were then free; and also the declarations of said testator, made some twenty odd years before the trial, that Gracey and her children would be free at the age of twenty-eight years; to which evidence the defendants objected, “on the ground that parol declarations in a suit for freedom are insufficient to establish freedom.” But the court overruled the objection, and the defendants excepted.
Parol declarations are certainly insufficient, in this state, to confer freedom on a slave. But parol declarations of a defendant in a suit for freedom, that the plaintiff is free, are admissible evidence of the fact, according to the general rule that the admissions of a party to a suit are evidence, against him. The declarations in such case do not confer freedom; do not ^change the status of the plaintiff; but merely tend to show what that status is, to wit, that he is a free person, however his freedom may have been acquired. He may have acquired it in a variety of waj's, and otherwise than by will or deed: as for example, by being born of a free mother. He and his maternal ancestors may always have been free. In many cases he might be unable to produce any muniment of his freedom; either because such muniment never existed, or because it has been lost, or is not in his possession or power. And an admission of his freedom by the party detaining him as a slave, may be the best, if not the only evidence of the fact which can be produced. Such an admission is competent evidence in any suit for freedom; its weight being dependent on the circumstances of each case, and being a matter for the consideration of the jury.
2. After the plaintiffs had iuiroduced the declarations of Janies Fulton, the testator of the defendants, in regard to the rig-ht of the plaintiffs to freedom as aforesaid, and also the deed of the 23d of March 1805, from Richards to Bolling and wife, the plaintiffs offered to give in evidence to the jury the register of Nancy and the certificate of the County court of Rockingham to the correctness of said register, and also-the affidavit of Christena Hottle: To which evidence the defendants objected as improper to go to the jury, “because said papers were ex parte, and not legal evidence in this case of the right of Nancy or Gracey to freedom.” But the court overruled the objection; and the defendants again excepted.
The plaintiffs based their claim to freedom on the ground that they inherited it *834 from Nancy, the mother of Gracey. Any legal evidence tending to prove that Nancy was free at the time of the birth of Gracey, is relevant and admissible evidence in support of the ^plaintiffs’ claim. The evidence objected to, as mentioned in the said bill of exceptions, seems to be of that character.
The registry was made under the act passed January 25th, 1803, entitled “an act more effectually to restrain the practice of negroes going at large;” 2 Stat. at Large, new series, p. 417, ch. 21; which required every free negro to be registered in the court of the county in which he resided, by the clerk of the court of said county, in a book to be kept for that purpose; that the register should specify, among other things, in what court such negro was emancipated, or that he was born free; that the court should certify such register to have been truly made; and that a copy thereof, signed by the clerk and attested by a justice, should be delivered to the said negro. This law, with some changes not material to be here set forth, has remained in force ever since its passage. 1 Rev. Code of 1819, p. 438, l 67; Code of 1849, p. 466, g 6.
It is at least questionable whether a register, made and certified according to law, is not prima facie evidence of every fact therein stated, in any controversy involving the freedom of the negro registered, or of any other persons claiming freedom under such negro. See 1 Greenl. Ev. (j 483, 485, 491, 493. If it be so, then the register of Nancy is prima facie evidence of the fact therein .stated, that she was born free.
But it is unnecessary to go to that extent, in the decision of the question now under consideration. It is sufficient, for this purpose (as the reason assigned for the objection taken to the evidence concedes), that the register of Nancy is evidence of her right to freedom at the time it was made. The fact that she was free at that time, is a very important link in the chain of evidence necessary to show that she was free at the time of the birth of Gracey. Evidence of her having acted and been generally reputed as a free person, is ^certainly admissible evidence of her freedom. It is the strongest possible evidence of that character, that in 1817, about the time her term of service under the deed aforesaid expired, she was duly registered as a free person, and the court certified that such register was truly made; and that her right to freedom accordingly, so far as the record shows, has never since been controverted. The ninth instruction asked for by the defendants and given by the court, that the said register is only prima facie evidence that Nancy was entitled to freedom at that time, “liable to be rebutted by evidence that she was not free according to law, but that it is no evidence that she was entitled to freedom before that time, nor that any child she had before that time was entitled to freedom,” is an exposition of the law, of which the defendants at least have no cause to complain'; and it is sufficient to show that their objection to the register as evidence was properly overruled. See Pegram v. Isabell, 2 Hen. & Munf. 193.
The register and certificate are therefore admissible evidence; and so also is the affidavit of Christena Hottle. It was part of the evidence on which the register was founded; is referred to therein; and, with the said deed, was endorsed, filed and preserved by the clerk in his office. She vías the person last entitled to the services of Nancy under the said deed, and held her when her term of service expired. Her only claim to Nancy was under the said deed, and under her husband Henry Hottle. And the only claim of the appellants’ testator James Pulton to Gracey, was under the same deed, and under the said Henry Hottle. She was as much entitled to Nancy absolutely, as he was entitled to Gracey absolutely. Her admission is as much evidence of the freedom of Nancy, as his is of the freedom of Gracey. Her affidavit is nothing more than her admission under oath of Nancy’s freedom. *Her admission is evidence, not only against her, but against all persons claiming under her. The claim of the testator of the appellants must have been under her, if they had any claim at all to Nancy. The onl3’’ persons, so far as the record shows, who appear to have had any interest in Nancy, supposing her to have been a slave, were Thomas Richards, the grantor in said deed, and the person entitled to her services under it. The admissions of these persons were competent evidence ,of her freedom in this suit. The deed itself is an admission of her freedom by Richards, tand was admitted as evidence without objection. The affidavit, as before stated, is an admission of her freedom by the person last entitled to her services under said deed, and is, therefore, admissible evidence.
3. After all the evidence had been given, the defendants moved the court to exclude as evidence from the jury the declarations of James Pulton as to the right of Gracey to freedom, “on the ground that the plaintiffs had proved by the said deed and other evidence, that James Pulton had only a temporary interest in said Gracey and her children; and never having been the fee simple owner his declarations are not evidence for the purpose of proving a right to freedom.” But the court overruled the motion ; and the defendants again excepted.
A plaintiff in a suit for freedom must make out his title against all the world. The only issue in the suit is, whether he be free or not; and if he be not free, he must fail in the suit, whether he be the slave of the defendant or of some other person. The defendant’s admission of the plaintiff’s freedom is always evidence of the fact against the defendant, whether he ever had any interest in the plaintiff as a slave or not, and whatever such interest, if any, may have been. It is, however, only presumptive evidence, liable to be repelled bjr proof that the plaintiff is *835 the slave either *of the defendant or of some other person. And the judgment which may be recovered by the plaintiff upon such evidence, cannot affect the title of any other person than the defendant and those who claim under him. The motion to exclude the evidence was therefore properly overruled.
4. After all the evidence had been given and ten instructions had been asked for by the defendants, and given bjr the court to the jury, the defendants moved the court to instruct the jury that the said deed of the 23d of March 1805, from Richards to Bolling and wife, “is not evidence wich tends to rebut the presumption of slavery resulting from the color and African descent of the plain tiffs and Nan, or to establish a preexisting title to freedom.” But the court refused to give the said instruction; and the defendants again excepted.
In the case of a person visibly appearing to be a negro, the presumption is that he is a. slave; but in the case of a person visibly appearing to be a white man or an Indian, the presumption is that he is free. Hudgins v. Rights, 1 Hen. & Munf. 134, and opinion of Roane, J., Id. 141. In this case, any legal evidence tending to show that the plaintiffs are free, tends to repel the presumption arising from their color, that they are slaves, and is therefore ad - missible. The deed of the 23d of March 1805 is of that character. It does not profess to be a deed of emancipation; but is merely a conveyance by Richards to Bolling and wife of the services of Nan and her children for certain terms respectively; at the expiration oí which, it declares that she and they are to be discharged from all further service. It does not describe them as slaves, but as free persons, at least ai the end of their respective terms of service. And as it was plainly not intended to be a deed of emancipation, it seems to imply that Nan had previously acquired her freedom by birth, or in some other legal mode. At all events, it is “evidence which *tends to rebut the presumption of slavery resulting from the color and African descent of the plaintiffs and Nan, or to establish a pre-existing title of freedom;” and the court therefore properly refused to give the eleventh instruction asked for by the defendants.
5. After evidence had been introduced by the plaintiffs tending to prove Gracey’s right to freedom upon her arrival at the age of twenty-eight years; and after the introduction by them of the deed of the 23d of March 1805, the defendants, to sustain the issue on their part, and for the purpose of showing the ages of Gracey^s children, and which of them were born before she arrived at the age of twenty-eight years, offered to give in evidence to the jury an old book entitled “Select Sermons by Mr. Andrew Gray,” in which book, and on 31st, 32d and 33d pages thereof, the date of the birth of Gracejas children, and also of other children of other negro women of said James Shilton, were written. It was proved that the book ivas said Jfulton’s, and was kept by him in bis house to the time of his death; and that the entries therein, of the birth of said negroes, was in his handwriting, and seemed to have been made many years ago. To which evidence the plaintiffs objected, and the court sustained the objection. Whereupon the defendants again excepted.
The evidence thus excluded was not material, and would not have affected the verdict; which was in favor of all the plaintiffs, though it was proved by other evidence that four of them, children of Gracey, were bom before, and her other children after she attained the age of twenty-eight years, and that all of the said children were under that age at the time of the trial. But it would have been inadmissible if it had been material. The principle upon which such entries are admitted is (in the language of Ivord ISldon "in "Whitelocke v. Baker, 13 Ves. R. 511, 514), “that they are the natural effusions of a party, who must know the truth, and who speaks upon an occasion when his mind stands in an even position, without any temptation to exceed or fall short of the truth.” 1 Phil. EJv. 239; 2 Stark. E)v. 605. The very foundation on which such entries are admissible fails, where it is probable that parties who made them labored under any temptation to misrepresent the facts; when that is the case, such evidence is inadmissible. Id. If the entries excluded in this case be material to the defence, then clearly the party who made them labored under a temptation to misrepresent the facts, and therefore the said entries were inadmissible evidence, and were properly excluded.
6.The 6th and last exception taken by the defendants, was to the refusal of the court to set aside the verdict, on the ground that it was contrary to the law and evidence.
There is nothing in the case to show that Natl was ever a slave, except the fact of her color and African descent: and the presumption arising from that fact, seems to be repelled by the other facts proved in the case. The first information we have of her is, that in 1805, when the deed of the 23d of March of that year was execnled, she resided in the town of Alexandria. And she and the deed were transferred from one to another in that town until 3808, when they were transferred to Christian Hottle, who purchased her for his brother, Henry Hottle of the county of Rockingham, where, it appears, she has ever since resided. She is not described as a slave in the said deed, nor in any assignment thereof, nor in the will of Henry Hottle, nor in the affidavit of Christena Hottle. The deed does not profess, and plainly was not intended, to be a deed of emancipation, but purports .to be merely a conveyance of the temporary services of Nan and of *any children she might have during her term of service, to which temporary services the grantor seems to have claimed title, *836 but in what way or by what right, does not appear. The deed rather implies that she was free at the time of its execution, and states that she and her said children at the expiration of their respective terms of service were “to be discharged from all further service” — words, rather inappropriate to the purpose of emancipation, but perfectly consistent with the idea that she was already free, but bound to serve for a limited period. She was given by the will of Henry Hottle to his wife Christena Hottle, “to stay with her until the time she was bound to him should be expired.” Shortly after that time expired, to wit, in April 1817, Christena Hottle made affidavit that Nan had “served out the time for which she was sold to her deceased husband,” and was then free. And in the next month, May 1817, Nan was registered in the office of the County court of Rock-ingham as a person “born free, but bound to serve a certain number of years; which she had duly served, as appeared by her papers filed in said office;” and the court certified the register to have been truly made, and ordered a copy to be furnished her in the manner prescribed by law. It does not appear upon what information the fact was stated in the register that she was born free. It is not probable that it would have been so stated on information derived alone from Nancy, if indeed she had any knowledge on the subject. The fair presumption is, that it was stated upon information derived from some of the parties claiming under the deed — probably Chris-tena Hottle, who seems to have furnished her with the deed and affidavit, and no doubt otherwise assisted her in obtaining the register. At all events, we find the fact thus solemnly and authentically stated in 1817; and she has enjoyed her freedom, without interruption, *ever since; living all the time in the same county, and probably in the same neighborhood with the testator of the defendants, until his death in 18SS. The only other children of Nan, born during her term of service, who survived the age of twenty-eight years, besides Gracey, were discharged from service at that age, according to the provisions of the deed, and have ever since enjoyed their freedom without interruption. Gracey alone and her children have been detained in slavery by the defendants, and their testator. He, on several occasions, admitted that they were free, or would be at a certain age. And after he determined to detain them as slaves, the only reason he assigned for doing so (as far as the record shows), was, “that he had been paying taxes on Gracey, and meant to hold her.” He had no claim to them except under the said deed; and he certainly had no rightful claim under that, to Gracey after she attained the age of twenty-eight years, and her children thereafter born. They, at least, either belong to some other person than the defendants, or are free. No other person has ever claimed them; and it may reasonably be presumed that they are free. Upon the whole, we may well conclude that the jury were warranted by the evidence in finding the plaintiffs to be free, and therefore that the Circuit court did not err in refusing to set aside the verdict. (
The court is of opinion that there is no error in the judgment, and that it be affirmed.
Judgment affirmed.